## RAINS v. WARE & WARREN.

1. An affirmation in a judgment *nunc pro tunc*, that the record discovered sufficient matter to authorise the amendment, will sustain it, though the matter is not specially stated, *if the defendant appeared, upon the motion, to perfect the judgment*, and does not show by a bill of exceptions, or in some other appropriate manner, that the facts recited in the entry are untrue.

2. An Indian, the head of a family under the treaty made with the Creek Indians in 1832, was located on a half quarter section of land—the President had never approved of a sale of it by the reservee, nor had a patent therefor issued to any one, although five years had elapsed since the date of

the treaty, and before the rendition of a judgment against F., at which latter period F. was in possession of part of the land, by his tenants: *Held*, that although a patent might be necessary to consummate the title of the reservee, or to furnish complete evidence of it, yet the failure to issue the patent did not avoid the title which the treaty, location and continued occupation impart; that the reservee, for any thing appearing to the contrary, may still reside on his reservation, that F. may hold the part in his possession under a lease for an unexpired term, and upon this hypothesis has an interest that may be levied on and sold to satisfy the judgment.

Writ of Error to the Circuit Court of Macon.

THIS was an action of trespass, at the suit of the defendants in error, against the plaintiff and Jackson Rains, to try the title to a half section of land, particularly described, and to recover damages for its occupancy. The cause was tried on the plea of "not guilty." On the trial, a bill of exceptions was sealed at the instance of the defendants, from which it appears that the plaintiffs adduced a judgment in their favor against James D. Freeney, and an execution which had issued thereon; and proved that the execution had been levied on the land in question, and that a sale thereof had been made under such levy to the plaintiffs, who received a deed from the sheriff. It was also proved by the plaintiffs, that Freeny at the time of the rendition of the judgment, had been in possession of a part of the land in question; that the defendant, Allen Rains held under one Motley, and Motley under Freeny: *Further*, that Allen Rains was in possession of a part of the land before and at the time of suit brought.

Defendant then proved that the land sought to be recovered was an Indian reservation under the Creek treaty of 1832, and that the President had never approved a contract for the sale of it by the Indian located thereon, to a white person: *Further*, that a patent to the land had never issued to any one.

The court charged the jury, that if the land sued for was an Indian reservation under the treaty of 1832, although the Indian had not disposed of the same according to the provisions of the treaty, and more than five years had elapsed from

the date of the treaty up to the rendition of the judgment in favor of the plaintiffs, if Freeny had possession of the lands at the latter period, then in the absence of other proof, it must be intended that he had such title as was the subject of levy and sale.

A judgment was rendered for the plaintiffs, reciting that the jury found Jackson Rains not guilty, and that the defendant, Allen Rains, was, at the commencement of the suit, and still is in the possession of the north west quarter, &c. (being part of the land in controversy;) they also assessed damages.

At a subsequent term, the plaintiffs moved to amend the judgment *nunc pro tunc;* thereupon a judgment was rendered, which recited the appearance of the parties by their attornies, and that sufficient matter appeared of record to amend by: *Further*, that "the jury upon their oaths do say, that they find Jackson Rains not guilty, but they find Allen Rains guilty of the trespass alledged in the plaintiff's declaration, that the title to the north-west quarter, &c. (as in first judgment,) at the time of the institution of this suit, was, and still is, in the plaintiffs, and that the said Allen Rains, was, and still is in the wrongful and illegal possession of the same, and unlawfully withholds and detains said possession from said plaintiffs, and that they assess their damages as in the first judgment. In other respects there is no difference in the entries, and they are unobjectionable.

S. WILLIAMS, for the plaintiff in error, made the following points: 1. The verdict of the jury is special, and the facts found by them do not authorize the judgment rendered by the court. 2. The omission of the jury to find the defendant guilty, is an omission to find a material fact, and therefore instead of the judgment rendered, it should have been for the defendant, Allen Rains. 3. Full cost should not have been given against Allen Rains in the court below, and the judgment is so far irregular; for on the finding in favor of J. Rains, all the costs caused by him were cast upon the plaintiffs in the court below. 4. The judgment *nunc pro tunc* does not cure the defect—it being apparent in the record, what the finding of the jury was, and that the finding au-

thorized no such judgment.  5.  The bare possession of land
is not the subject of levy and sale under execution, and the
proof shows that Sweeny had no more than the possession.
6.  The charge to the jury is erroneous, as the proof does not
show such a title in Freeny, as was the subject of a levy and
sale under execution.

COCKE, for the defendant in error, contended—1.   By the
treaty of 1832, the title is vested in the Indian reservee, after
the expiration of five years from the date of the treaty, with-
out the issuing of a patent.   [Ladiga v. Rowland, 2 Howard,
581.]   2.   The lessor of plaintiff in error being in possession
at the date of the judgment, and his lessees since, the court
will presume that the title is with the possession.   [Camp-
bell v. Roberts, 3 A. K. Marshall, 623.]   3. ·The possession
of the lessor of plaintiff in error, was sufficient evidence of ti-
tle to render the land subject to levy and sale under execu-
tion.   [Heydenfeldt v. Mitchell, 6 Ala. 70 ; Land v. Hop-
kins, 7 Ala. 115 ; Badger v. Lyon, 7 Ala. 564.]   4. If the
court erred it was in permitting the plaintiff in error to in-
troduce evidence tending to show an outstanding title.  This
a defendant in execution, and those claiming under him, are
not allowed to do in an action by a purchaser at sheriff's
sale to recover the possession.   [Avent v. Read, 2 Port. 480.]
5.  In such a case the purchaser is not required to trace the ti-
tle back, further than the defendant in the judgment.  [Brock,
et al. v. Young, et al. 4 Ala. 584.]   The second assignment
presents no question, other than whether the judgment is
good in form and substance ; and the judgment is certainly.
sufficient.

COLLIER, C. J.—The first entry of a judgment found in
the transcript is certainly erroneous, in not setting out such
verdict as warranted the action of the court.   The second is
an entry of a subsequent term, and technically speaking is a
judgment *nunc pro tunc.*   We have not been able to discov-
er any objection to it in substance, and none has been pointed
out at the bar.   The verdict which it recites, though not
special, employs much more circumlocution than is necessa-
ry to make it legal, yet this verbosity cannot prejudice.

The second entry, though made *nunc pro tunc*, cannot be regarded as irregular under the circumstances. We need not inquire whether the affirmation in the judgment that the record discovered sufficient matter to authorize the amendment, would in all cases be conclusive, as it must in that now before us be so held. If the defendant appears upon a motion to perfect the judgment, and does not show by a bill of exceptions, or in some other appropriate manner, that the facts recited in the entry are untrue, he must be concluded on error.

The facts recited in the bill of exceptions, fall short of showing that Freeny had not such an interest in the premises in question as were the subject of levy and sale under execution. By the treaty of Washington, made with the Creek tribe of Indians, in 1832, the United States engage to allow every head of a Creek family to select one half section each, which shall be reserved from sale for their use for the term of five years, unless sooner disposed of by them. *Further*, at the end of five years, those entitled to these sections, who are desirous of remaining, shall receive patents, &c.

It is shown that there had been a location under the treaty, of the premises in question. The failure to issue a patent, after the expiration of the five years, does not of itself divest the title which the treaty, location, and continued occupation impart; although a patent may be necessary to consummate the title, or to furnish complete evidence of it.

For any thing appearing to the contrary, the reservee may have been desirous of remaining in the country, and may be at this time residing on his reservation—Freeny may hold the portion for which the verdict was recovered, as his lessee for a term unexpired at the trial. If this be true, Freeny certainly had a right that could be levied on, and sold. See Doe ex dem. Davis v. McKinney and McKinney, 5 Ala. R. 719, and cases there cited. The possession of the land, and the leasing it to others, warrant the inference that he had a legal interest, resting upon a title inchoate or perfect. Such an interest may be sold under execution. [Doe ex dem Heydenfeldt v. Mitchell, 6 Ala. 71; Land v. Hopkins, 7 Id. 115; Badger v. Lyon, Id. 564.]

The judgment of the circuit court must be affirmed.